## MILLER & BIGGERSTAFF v. BURKE.
### (No. 8425.)

(Court of Civil Appeals of Texas. Dallas. Jan. 29, 1921. Rehearing Denied March 5, 1921.)

1. Brokers ⬲82(4)—Facts established by evidence must be substantially those pleaded.

In an action for commissions earned by selling land, the facts established by the evidence must be substantially the same as those pleaded by plaintiffs to justify recovery.

2. Brokers ⬲63(1) — Acquiescence in new agreement held to release liability for commissions on first contract.

The fact that brokers and the purchaser of land acquiesced in the owner's refusal to carry out the first contract of sale, and the fact that the brokers made a new agreement to sell the land at a different price, absolved the owner from any liability for commissions as on the first contract of sale.

3. Brokers ⬲82(4)—Proof of sale held variant from pleadings.

In brokers' action for commissions earned by sale of a farm, proof as to the details of sale introduced by plaintiff brokers *held* variant from their pleadings, so that verdict was properly directed against them.

### On Rehearing.

4. Brokers ⬲82(4) — Evidence for brokers held not to prove allegation land was sold for cash and notes.

In an action by brokers for commission earned on sale of a farm, evidence that the trade was agreed on in the summer of 1918, that defendant seller should receive $8,000 or $10,000 for his land and receive the balance January 1, 1919, when the trade was to be consummated, no notes being executed, *held* not to prove the allegation the land was sold for cash and notes—cash enough to enable defendant owner to cash the notes for the remainder of the consideration.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Suit by Miller & Biggerstaff against A. M. Burke. From judgment for defendant, plaintiffs appeal. Affirmed.

John Doyle and Truett & Neathery, all of McKinney, for appellants.
G. R. Smith, of McKinney, for appellee.

HAMILTON, J. Appellants sued appellee to recover commissions alleged to be due them for twice selling to Lee Laney a tract of land in Collin county.

Appellants alleged that during 1918 they were in the real estate business at Celina, Tex., buying and selling lands and finding purchasers for lands listed with them for sale or exchange; that in June, 1918, appellee listed his farm, containing 202 acres of land, with them to sell for him at $150 per acre, agreeing that they should have for commission all above $150 per acre for which they might sell it, the agreement as to terms of sale being that such cash payment should be made as to enable appellee to cash the notes to be given for the remainder of the consideration; that they sold the land to Lee Laney at $155 per acre on the terms of sale to which appellee had agreed, as above set out; that after the trade had been made by appellants with Laney appellee refused to consummate the deal and refused to pay the commission, although Laney was ready, able, and willing to execute the trade. For this breach they alleged their damage to be $1,010.

They also alleged that after the breach of contract above stated they again agreed with Burke to sell the land for $165 per acre, they to receive for their services a commission of $5 per acre, aggregating $1,010; that they again sold the land to Lee Laney for this price and upon the same terms as before, that is, for a cash payment sufficient to enable Burke to cash the notes to be executed by Laney for the balance, and they alleged that the second understanding as to terms was the same as the first.

The case was tried before the court and a jury. Appellee pleaded in answer to the allegations. Upon the completion of the evidence in support of plaintiffs' case defendant, without offering evidence, requested the court to instruct the jury to find for him. The requested instruction was given, and, in conformity with it, a verdict in defendant's favor was returned.

This appeal complains of the peremptory instruction, and rests upon the proposition that the instruction was unwarranted by the law and evidence, and was an invasion of the jury's province. The briefs of appellants and appellee indicate that the action of the court was based upon the opinion that the petition was not sustained in material respects by the proof introduced to support it, but that there was a fatal variance between the allegations and the proof; the petition asserting a particular contract as to terms and the evidence proving an entirely different one.

[1] To determine the soundness of this view and the correctness of the charge resulting from it, it is essential to state the facts established by the evidence and say whether or not they are substantially the same as those pleaded. If the transaction, in all essential terms proved, can be identified by the description of the trade embodied in the petition, then the charge, of course, was wrong,

---

⬲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and the case should be reversed and remanded. On the other hand, if the terms of sale given appellants when the land was listed were materially and distinctly different under the proof from those contained in the allegations, or if the alleged terms of sale given appellants by appellee were the same as those proved, but the terms of the actual contract made by appellants with Laney were materially variant therefrom, the court properly instructed the jury. The proof must be such as proves that the understanding between the parties to this appeal was that stated in the petition, and also that the actual sale made to Laney by appellants was in all essential and material respects in conformity with the terms of sale given appellants by appellee when the agency was created. Inference and presumption cannot be resorted to in order to bridge whatever, if any, intervening space of variance there may be. Pleadings which assert evidential facts to be proved must, at the end of the evidence, be in alignment with it. Otherwise a party could allege one set of facts and prove another, and this would be to destroy the very purpose of such pleadings, which is to apprise the adverse party before the trial commences what issues he will have to meet in the contest. Roseborough v. Gorman, 6 Tex. 313; Moore v. Kennedy, 81 Tex. 144, 16 S. W. 740; Lemmon v. Hanley, 28 Tex. 219; Riverside Lumber Co. v. Lee, 7 Tex. Civ. App. 522, 27 S. W. 161.

No witness except appellant Fred Biggerstaff testified to the terms agreed upon when the land was listed. The contract between Miller & Biggerstaff and appellee, Burke, was not in writing. Biggerstaff's testimony may be correctly epitomized to the following effect: That in the early part of 1918 appellee listed the land with his firm on these terms: The sale was to be made for $150 per acre net to appellee. One-third, or about one-third, of the consideration was to be paid in cash and the balance of the consideration was to be covered by the execution of 8 per cent. notes. Immediate possession was to be given under this agreement. In May, before any purchaser had been found, Burke told Biggerstaff that—

"The wheat crop at that time was getting pretty well advanced, and he would not agree to put the crop in at that time, and we would just call the proposition off and let the other set just as it was and give possession the 1st of January to the purchaser."

In June appellants sold the land to Laney at $155 per acre, Laney agreeing to pay $8,000 or $10,000 cash, and, while the witness' testimony is not clear as to what disposition this trade with Laney made of the balance of the consideration, it seems that it was to be represented by notes. He testified that he "priced the land to Mr. Laney at around $10,000 cash down and notes for the balance."

The total consideration was $31,000. Appellee refused to consummate the trade. But he then told appellants to sell the land at $160 per acre net to him and he would sell at that price. Nothing was said about terms when this offer was made. Biggerstaff took it for granted that the terms were to be the same. This last proposition was made to Biggerstaff by telephone. Burke stated that he would take $160 an acre net to him. There was nothing at all said about time of payment or the amount of cash to be paid. Nothing being said by Burke as to terms on this occasion, it seems that Biggerstaff presumed or took for granted that the sale was to be made by payment of $8,000 or $10,000 down and the balance to be paid January 1, 1919. Laney's offer was that such cash payment should be made and a contract entered with Burke for payment of the balance without interest on January 1, 1919. This offer was communicated to Burke and he refused to accept it. He had never stated any terms in connection with this particular $165 an acre offer of sale before Laney, through Biggerstaff, offered to pay that amount by paying $8,000 or $10,000 cash and contracting to pay all the rest on January 1st; but it seems that after Laney's offer to buy on the above terms Burke demanded all cash.

Biggerstaff testified that he and Laney had arranged with a Mr. Smith for a loan of $18,000 to be made to Laney on January 1st. In view of this arrangement it seems that Laney, through Biggerstaff, made the offer to pay either $8,000 or $10,000 cash and contracted with Biggerstaff to pay the balance January 1, 1919.

Laney testified that he had no understanding at all with Burke himself, but had all his transactions with Biggerstaff. So that his testimony sheds no light directly on the proposition of whether or not there is a material variance between the allegations and the proof, and is therefore of no consequence in determining what the terms were at the time of listing the land or the understanding on Burke's part at the time of the alleged sale.

[2] We think the fact that appellants and Laney acquiesced in Burke's refusing to carry out the first contract alleged, and the fact that appellants made a new agreement to sell the farm at a different price, absolved Burke from any liability on the first. The parties then stood in the same attitude toward each other in relation to the last agreement as if the other had never been made. However, proof of the terms of the first contract was necessary, because it was alleged that the same terms were in the last except as to price.

[3] The proof does not seem to us to conform to the pleadings. The allegation that enough cash was to be paid to enable Burke to cash the notes is not sustained by proof

that after Burke had receded from the first contract he authorized appellants anew to make sale at $160 per acre net to him, which they agreed to do without any accompanying stipulations or understanding as to terms. They could not presume that Laney's terms would be acceptable, nor could they agree with Laney upon the terms unless expressly authorized by Burke to make such agreement. They could not by inference bring forward from the repudiated contract the terms there given them upon which to effect sale and make them their authority for binding Burke to consummate the last trade, in the absence of an agreement that the terms were to be the same. Again, whereas it is alleged that notes were to be executed which Burke could cash, the trade finally made, as testified to by both Biggerstaff and Laney, was that Laney should pay $8,000 or $10,000 cash and make a contract to pay the remainder on the first day of the following year without interest; Burke keeping possession till then. These terms were never expressly proposed by Burke in connection with the last offer, and we think the evidence reveals nothing to justify the presumption that his offer exclusively contemplated only such terms. He expressly refused to accept them, and demanded all cash. Accordingly, the case made by the testimony in appellants' behalf proved that the agreement between them and Burke was that they were to sell the land for $160 per acre net to him, without specific terms being stipulated, and they taking for granted that the terms of the original stipulation should apply. In this respect the proof fails materially to comport with the pleadings that certain cash was to be paid and notes for the balance given. Proof that the rejected offer to pay Burke a sum at the time the trade was made and to contract for the payment of the balance on January 1, 1919, no notes for it to be executed and no interest paid, was likewise not in harmony with the allegation that a sale was effected on the terms stipulated, except as to price, when the land was listed; those terms, as alleged, being a cash payment and notes, which Burke could cash, for the balance.

Appellants' assignment of error which complains of the court's excluding evidence that Biggerstaff would have paid for an abstract of title to the land is rendered nugatory by reason of the views above expressed upon the other feature of the appeal, and hence it is unnecessary to discuss this assignment.

The judgment is affirmed.

### On Rehearing.

Appellants in their motion for a rehearing insist that a proper construction of all the testimony sustains their contention that the trade last made with Burke contained a mutual understanding that the terms were to be the same as the terms of the trade first made and repudiated by him. They say that the proof, all taken and considered together, will reasonably and fairly support no other conclusion except that the terms were understood by the parties to be exactly the same except as to the price per acre, and that therefore the trade was in exact conformity with the listing agreement made. Upon reconsideration of the evidence we are inclined to concede the correctness of this position.

We believe the evidence might be said to bear the construction for which appellants contend.

[4] Appellants also insist, with equal zeal, that the trade proved by their testimony was the trade pleaded by them, and that a proper understanding of the evidence destroys the idea of any variance. To this view we do not accede. We do not believe the evidence to the effect that the trade was agreed upon in the summer of 1918 that Burke should receive $8,000 or $10,000 and receive the balance on January 1, 1919, when the trade was to be consummated, no notes being executed, proves the allegation that the land was sold for cash and notes—cash enough to enable Burke "to cash the notes" for the remainder of the consideration.

The motion for a rehearing is overruled.